IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 09-cv-01312-ZLW-MJW

ANDREW J. BOREL,

    Plaintiff,

v.

TREK BICYCLE CORPORATION,

    Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant's Motion To Limit Jon O. Jacobson's Expert Testimony (Doc. No. 33). Neither party has requested a hearing on this matter and the Court has determined that the motion can be resolved on the parties' briefing and that no hearing is necessary.[1]

---

[1] Burlington N. and Santa Fe Ry. Co. v. Grant, 505 F.3d 1013, 1031 (10th Cir. 2007) ("The trial court has the discretion to determine how to perform its gatekeeping function. . . . [A] hearing is not specifically required.") (*citing* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999) and Hynes v. Energy West, Inc., 211 F.3d 1193, 1203-04 (10th Cir. 2000)). When ruling on the papers, a district court must create a "sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law." Burlington Northern, 505 F.3d at 1031 (*quoting* Dodge v. Cotter Corp, 328 F.3d 1212, 1223 (10th Cir. 2003)).

**I.     BACKGROUND**

On April 17, 2007, Plaintiff was riding his bicycle on a dirt trail in Campe Verde, Arizona.[2] The bicycle frame was manufactured by Defendant.[3] Plaintiff alleges that as he crossed a cattle guard at the end of the trail, the bicycle frame failed at the junction of the head tube, top tube, and down tube which caused him to be thrown approximately forty feet.[4] Plaintiff alleges that he landed on his faced and sustained severe injuries, which required numerous surgeries.[5]

Plaintiff initiated this products liability suit, arguing that the bicycle frame failed as the result of metal fatigue.[6] Plaintiff retained an engineering expert, Jon O. Jacobson, Ph.D., P.E., to determine the condition of the bicycle as well as the cause of the failure of the bicycle frame.

Defendant does not question Dr. Jacobson's credentials, nor is it seeking to exclude Dr. Jacobson's expert testimony with respect to the issue of metal fatigue. Instead, Defendant is arguing that Dr. Jacobson's testimony regarding alternative design theories should be excluded because (1) it was not timely disclosed under Fed. R. Civ. P. 26(a)(2)(C) and (2) it is improper expert testimony under Fed. R. Evid. 702.

---

[2] Complaint (Doc. No. 1; June 4, 2009) at 2 ¶ 8.

[3] Id. at 2 ¶ 7.

[4] Id. at 2 ¶ 8.

[5] Id.

[6] Id. at 2 ¶ 9.

For purposes of this motion, the Court will assume, without deciding, that Plaintiff complied with Fed. R. Civ. P. 26(a)(2)(C).[7]

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under this rule, the district court thus acts as an evidentiary "gatekeeper" to determine whether an expert's proffered testimony pertaining to scientific knowledge is reliable and relevant.[8] A court determines reliability by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid."[9] Expert testimony, however, carries with it a danger that the jury will give it disproportionately large weight, due in part to the difficulty of evaluating expert opinions.[10] Fundamentally, then, the purpose of the Daubert inquiry is to assure that a trial expert adheres to "the

---

[7] The Court does not have a copy of Plaintiff's Fed. R. Civ. P. 26(a)(2)(B) expert disclosures so it is unable to rule on this argument regardless.

[8] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); Black v. M & W Gear Co., 269 F.3d 1220, 1237 (10th Cir. 2001).

[9] Daubert, 509 U.S. at 589.

[10] Id. at 595.

3

same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[11]  However, the court need not determine that the expert evidence is correct or irrefutable in order to admit it.[12]

Daubert provides several nonexhaustive factors for district courts to consider in assessing whether scientific evidence is reliable: (1) whether the technique can be and has been tested; (2) whether the technique has been subjected to peer review; (3) the known potential error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has gained general acceptance in the scientific community.[13]  These factors do not represent "a definitive checklist or test."[14]  Rather, "the inquiry envisioned by Rule 702 is . . . a flexible one."[15]  The specific factors considered in deciding whether evidence is admissible will vary depending on the specific nature of the testimony to be presented in a particular case.[16]

---

[11]Kumho Tire, 526 U.S. at 150.

[12]Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999).

[13]Daubert, 509 U.S. at 593–95; Mitchell, 165 F.3d at 780.

[14]Daubert, 509 U.S. at 593–94.

[15]Id.

[16]Kumho Tire, 526 U.S. at 150.

4

Generally, the court should focus on the experts' methodology rather than the conclusions that they generate.[17] A court may conclude, however, that "there is simply too great an analytical gap between the data and the opinion proffered."[18]

## III. ANALYSIS

Dr. Jacobson's expert report focuses exclusively on matters relating to metal fatigue.[19] The first portion of the report contains his visual impressions of the bicycle's condition and the second half contains his opinions concerning the frame's metal fatigue and the forces required to cause the observed fatigue. His conclusion is that the fracture in the bicycle frame "occurred because of the presence of preexisting fatigue cracks."[20] There is no discussion as to how these fatigue cracks could have been prevented through bicycle design alterations.[21]

During Dr. Jacobson's February 23, 2010, deposition testimony, he went beyond the content of his report and discussed at length his opinion as to how design changes to the bicycle frame could have potentially prevented the fracture. After addressing the

---

[17] See Daubert, 509 U.S. at 595; Hollander v. Sandoz Pharms. Corp., 289 F.3d 1193, 1205 (10th Cir. 2002).

[18] Gen. Elec. v. Joiner, 522 U.S. 136, 147 (1997).

[19] Def.'s Mot. (Doc. No. 33), Ex. 1.

[20] Id. at 7.

[21] Dr. Jacobson admits that his alternative design opinions do not appear in his report. Id., Ex. 2 (Deposition), p. 87:9-13.

5

fatigue limitations of aluminum,[22] Dr. Jacobson proceeded to opine that separation of the down tube and top tube where they attach to the head tube would have been a wiser design choice.[23] He further opined that these high-stress junction areas could have also been reinforced with the use of "doublers" and/or use of thicker tubes to prevent the metal fatigue seen in this case.[24] Finally, Dr. Jacobson referenced a drawing prepared by Plaintiff's counsel to visually demonstrate his alternative design opinions.[25]

These alternative design opinions are not proper expert testimony in this case pursuant to Fed. R. Evid. 702. Plaintiff's argument is that Dr. Jacobson's "40 years of personal experience in the fields of mechanical engineering and bioengineering as well as personal experience and knowledge of metallurgy" are sufficient bases to find the opinions reliable.[26] While the Court does not disagree that Dr. Jacobson's background allows him to provide educated opinions, this is not nearly enough to rise to the level required by Fed. R. Evid. 702 and Daubert to allow these opinions be accepted as expert testimony during trial.

---

[22] Id. at 84:8-85:3. The Court notes that Defendant appears to object to Dr. Jacobson's discussion of aluminum's fatigue strength, as it references this deposition testimony in its motion. *See* Doc. No. 33 at 7. To the extent that this testimony relates to why this particular bicycle frame failed, it is appropriate to explain Dr. Jacobson's conclusions regarding fatigue cracks. Id. at 83:21-84:7.

[23] Id. at 85:10-86:4.

[24] Id. at 86:5-87:8.

[25] Id. at 117:23-129:19.

[26] Pl.'s Resp. (Doc. No. 36; Apr. 18, 2010) at 4.

While the <u>Daubert</u> factors are nonexhaustive, Plaintiff's alternative design theories meet none of them. These theories were not generated via any reproducible or peer reviewed technique. None of these theories were formally analyzed, tested, or modeled to "determine whether [the proposed changes] would have changed the fatigue failure initiation points."[27] Dr. Jacobson admitted that there was no "analysis on . . . an exemplar of this bike or on this particular bike."[28] Further, there is no indication that doing testing, calculations, or modeling was an impossible undertaking.

Instead, the theories are wholly the product of Dr. Jacobson's "experience." It may be true that his design suggestions would have prevented the frame failure in this case. But it is equally true that these design theories could lead to the opposite result, since there is no empirical evidence to show otherwise.

As such, there is no way to guarantee the reliability of these alternative design theories, and introduction at trial would not materially assist the trier of fact.[29] Therefore, Dr. Jacobson is excluded from testifying about alternative bicycle frame design theories at trial.

---

[27]Def.'s Mot., Ex. 2 at 88:22-24.

[28]<u>Id.</u> at 85:10-12.

[29]Fed. R. Evid. 702.

**IV.	ORDER**

It is ORDERED that Defendant's Motion To Limit Jon O. Jacobson's Expert Testimony (Doc. No. 33; Apr. 30, 2010) is granted.

DATED at Denver, Colorado, this 1st day of July, 2010.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court