**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 09-cv-01312-ZLW-MJW

**ANDREW J. BOREL,**

**Plaintiff,**

**v.**

**TREK BICYCLE CORPORATION,**

**Defendant.**

_____

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

Defendant Trek Bicycle Corporation ("Trek"), by and through counsel HALL & EVANS, L.L.C., and pursuant to Fed. R. Civ. P. 56, hereby submits its Motion for Summary Judgment as follows:

**INTRODUCTION**

In this products liability action, Plaintiff Andrew Borel ("Plaintiff") contends he sustained severe injuries after he was allegedly thrown from his bicycle. The bicycle included a 2001 Klein[1] Adept Pro frame, which Plaintiff claims was defective. Plaintiff's Complaint for Damages and Jury Demand ("Complaint") asserts four claims for relief: (1) Strict Products Liability; (2) Breach of Express Warranty; (3) Breach of Implied Warranties; and (4) Negligence.

Trek now moves for summary judgment on all of Plaintiff's claims. As articulated more thoroughly below, the undisputed material facts demonstrate Plaintiff has failed to meet the

essential elements of any of the claims asserted in his Complaint. Indeed, Plaintiff has not and cannot establish the bicycle frame involved in this case was defective or unreasonably dangerous in any way. In fact, Plaintiff's own expert could not identify a defect in either the manufacturing or design of the subject bicycle frame. As such, all of Plaintiff's claims fail, and Trek is entitled to judgment as a matter of law.

## **STATEMENT OF UNDISPUTED MATERIAL FACTS[2]**

1. Plaintiff started mountain biking in the late 1990s. [See Plaintiff's Deposition, p. 59: 5-11, attached hereto as Exhibit A-1.]

2. Plaintiff purchased a 2001 Klein Adept Pro bicycle frame from "A Racer's Edge," a Klein dealer. [See Plaintiff's Depo., pp. 74: 12-25; 75:1, Exh. A-1.]

3. Plaintiff received "a lot of safety information" regarding his Klein bicycle frame. [See Plaintiff's Depo., p. 105:3; Exh. A-1.]

4. The 2001 Adept Pro Owner's Manual sets forth safety instructions, warnings, and express warranties. [See 2001 Adept Pro Owner's Manual, attached hereto as Exhibit A-2.]

5. Plaintiff owned the subject bicycle frame and component parts for approximately five or six years. [See Plaintiff's Depo., pp. 74: 12-25; 75:1; Exh. A-1.]

6. While mountain biking, Plaintiff likes to ride in "variable terrains," and has jumped his bicycle onto large rocks, from one major rock to another major rock, and off ledges. [See Plaintiff's Depo., pp. 92: 24-25; 93: 1-4; Exh. A-1.]

7. When asked during his deposition whether he had ever had occasion where both tires were off the ground, Plaintiff testified, "It's hard to know when you're coming off ledges if

---

[1] Trek purchased Klein in 1996 and quit making the Klein brand after 2002.
[2] The following facts are undisputed for the purposes of this Motion for Summary Judgment only. Trek specifically reserves the right to contest each and every one of these facts at any later stage of the proceedings, including at trial. Further, Trek reserves the right to contest any aspect of Plaintiff's allegations not specifically addressed herein.

both tires at the same time are off the – you know. … You do bunny hop, too. That would be a time when both tires would be off the ground. It could come from one ledge to another ledge." [See Plaintiff's Depo., pp. 107: 15-19, 107: 22-24, Exh. A-1.]

8.     On April 17, 2007, Plaintiff was riding his mountain bike on a dirt trail in Campe Verde, Arizona. His mountain bike was equipped with a Trek frame. [See Complaint, ¶ 8, Doc. No. 1.]

9.     To arrive at the trail, Plaintiff road his bicycle "about 35 to 45 minutes" on a "constant uphill climb," "got to the top, turned around and came back" down the hill. [See Plaintiff's Depo., pp. 118: 17-19; 119: 25-120: 21, Exh. A-1.]

10.    As Plaintiff coasted back down the hill, he saw a cattle guard and "quickened [his] brakes a little bit, decided it was fine, and kept on – let go of the brakes." [See Plaintiff's Depo., at 177: 8-15, Exh. A-1.] As he approached the cattle guard, Plaintiff was standing up on his bicycle, "out of the saddle." [See Plaintiff's Depo., 177: 16-21, Exh. A-1.]

11.    As he crossed the cattle guard, Plaintiff alleges the Trek bicycle frame failed, and the head tube fractured and caused Plaintiff to be thrown approximately 40 feet.[3] [See Complaint, ¶ 8]. Plaintiff alleges he landed on his face and sustained severe facial injuries. [*Id.*]

12.    Plaintiff filed this lawsuit against Trek, alleging the bicycle frame failed as a result of metal fatigue. [See Complaint ¶ 7.] Plaintiff asserts the following claims: (1) Strict Products Liability; (2) Breach of Express Warranties; (3) Breach of Implied Warranties; and (4) Negligence. [See *Id.* at ¶¶ 16-34.]

---

[3] The bike frame terminology relevant to this case include the top tube, which is the tube that makes the top part of the frame and runs horizontally from the handlebar area to the seatpost; the down tube, which is the tube that runs diagonally from the handlebar area to the gear/crankshaft area; the head tube, which is the short tube that runs vertically and is the junction of the top tube and down tube; and the steering tube, which is the tube that extends vertically through the head tube and is attached to the forks on the lower end and the handlebars at the upper end.

13.     Plaintiff retained Jon O. Jacobson ("Jacobson"), an engineer, to examine the bicycle frame and to determine the cause of the failure. [See Plaintiff's Expert Disclosures, p. 1, attached hereto as Exhibit A-3.]

14.     In his report, Jacobson opines that the bicycle frame failed due to a fatigue failure. Specifically, Jacobson opines, "the bicycle frame sustained a fracture at the joining of the head tube to the top and down tubes." [See Jacobson's Report, dated 12/14/09, p. 1, attached hereto as Exhibit A-4.]

15.     Jacobson found the fork had "an alignment of the steering tube 2.6 degrees rearward from the axis to the fork blades," and "the down tube of the frame had an upward bowing." [*Id.* at p. 3, Exh. A-4.]

16.     Jacobson further opined that "the fracture of the head tube at the joint with the top and down tubes occurred because of the presence of preexisting fatigue cracks. These were present before Andrew rode across the cattle guard. When he crossed the cattle guard the vibrating stresses caused the weakened head tube joint to fail resulting in the catastrophic separation of the structure of the bicycle frame." [*Id.* at 7-8, Exh. A-4.]

17.     Trek retained Dr. Gary Fowler, an expert in metallurgy, to examine the bicycle and to determine the cause of the bicycle frame's failure. Dr. Fowler agreed with Jacobson and concluded "(1) the bike frame steerer tube experienced a collision force sufficiently large to cause permanent deformation in the down tube and steerer tube; (2) the deformation caused a change in geometry and residual stresses that weakened the frame tube/head tube integrity; (3) multiple fatigue cracks initiated in the frame tube walls due to the loss of strength caused by frame deformation. Frame deformation preceded fatigue crack initiation; (4) the welds were of

good quality and did not separate." [See Fowler Report dated 12/11/09, pp. 2-3, attached hereto as Exhibit A-5.]

18.   Dr. Fowler concluded that "there is not any indication of a metallurgical or manufacturing defect." [See Fowler report, p. 3, Exh. A-5.]

19.   During Jacobson's deposition, he testified, "I haven't found a defect in this per manufacturing, no." [See Jacobson Deposition, p. 105: 11-14; attached hereto as Exhibit A-6.]

20.   Jacobson testified he has not "done any studies to determine" whether any alleged bad material was used in the bicycle frame design. [*Id.* at 117: 15-19, Exh. A-6.]

21.   Jacobson testified that "more likely than not it's a design defect" because the "fatigue wouldn't be visible and discoverable by the rider." [*Id.* at 105: 24-25; 106: 1-7, Exh. A-6.]

22.   When asked how the bicycle could be designed differently so that the rider could see the fatigue, Jacobson testified, "I don't believe they could." [*Id.* at 106:22-24, Exh. A-6.]

23.   During his deposition, Jacobson offered several opinions regarding alternative designs, which were not contained in his report. [*See, e.g.*, *Id.* at 85: 10; 87: 8; 106: 16-17; 117: 23; 124: 4, Exh. A-6.]

24.   On July 1, 2010, this Court issued an Order precluding Jacobson from testifying about alternative bicycle frame design theories at trial. [See Order, Doc. 50, dated 7/1/10.]

## **STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, this Court must view the record and all

5

reasonable inferences that may be drawn therefrom in the light most favorable to the nonmoving party. ***DP-Tek, Inc. v. AT & T Global Information Solutions, Co.,*** 100 F.3d 828, 831 (10th Cir. 1996); ***Wilson v. Meeks,*** 98 F.3d 1247, 1253 (10th Cir. 1996). Importantly, however, not all disputed facts qualify as "material" or "genuine."

A "material" fact is one which might affect the outcome of the dispute under the applicable law. ***Ulissey v. Shvartsman,*** 61 F.3d 805, 808 (10th Cir. 1995). A "genuine" fact does not exist simply by the nonmoving party demonstrating some metaphysical doubt as to the material facts. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*** 475 U.S. 574, 586 (1986). Instead, the nonmoving party must come forward with evidence significantly probative of her claims. ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 247-49 (1986). Ultimately, this Court must determine if, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" ***Matsushita,*** 475 U.S. at 586.

## ARGUMENT

Trek is entitled to summary judgment on all of Plaintiff's claims against it as a matter of law, as Plaintiff has not and cannot satisfy the requisite elements of his claims. More specifically, essential to each of Plaintiff's claims is a showing that the subject bicycle frame was defective and unreasonably dangerous or somehow not manufactured as warranted. Plaintiff has not produced any expert testimony, or any other evidence, regarding the bicycle's alleged defective condition.

In his report, Plaintiff's expert, Jacobson, merely states the bicycle frame failed due to metal fatigue. [¶ 12.][4] Notably, Trek's expert, Dr. Fowler, agrees the bicycle frame sustained a fatigue failure. [¶ 17.] However, fatigue failure is not a defective condition. Rather, the experts

---

[4] For the ease of reference, whenever possible, factual references will be made to the paragraph numbers contained in the above Statement of Undisputed Material Facts.

6

agree fatigue failure is caused by undue stress to the bicycle frame. [¶¶ 16-17.] Although Jacobson attempted to offer additional opinions during his deposition regarding purported alternative designs, this Court has ruled Jacobson may not testify regarding such alternative designs and must adhere to the opinions set forth in his report. [¶¶ 23-24.] There is nothing in Jacobson's report establishing the bicycle was in a defective condition or that the bicycle was unreasonably dangerous to consumers.

Even if Jacobson was permitted to testify regarding the fatigue strength and properties of aluminum[5], such testimony does not render the bicycle defective or unreasonably dangerous. Indeed, if the use of aluminum material in bicycles was unreasonably dangerous, bicycles around the world would be defective. Aside from the conclusory allegations contained in Plaintiff's Complaint, there is no evidence to establish the subject bicycle was defective and unreasonably dangerous. As such, Plaintiff's claims against Trek fail, and Trek is entitled to judgment as a matter of law.

### A. Plaintiff States No Cognizable Claim of Strict Products Liability Against Trek As a Matter of Law

To state a viable strict liability claim under Colorado law, a plaintiff must prove: (1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it was sold; (3) the design defect caused the plaintiff's injury; (4) the defendant sold the product and is engaged in the business of selling products; and (5) the plaintiff sustained damages. *See Barton v. Adams Rental*, 938 P.2d 532, 536-37 (Colo. 1997); *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo. 1992).

---

[5] In its Order, the Court held, "The Court notes that Defendant appears to object to Dr. Jacobson's discussion

For strict liability in tort, a plaintiff has the burden of proving the product was defective, and the defect must render the product unreasonably dangerous. *Barton*, 938 P.2d 532 (Colo. 1997); *Armentrout*, 842 P.2d at 182; *White v. Caterpillar, Inc.*, 867 P.2d 100 (Colo.App. 1993); *cert. denied* (1994); *Potthoff v. Alms*, 583 P.2d 309 (Colo. App. 1978). *See also* *Hilberg v. F.W. Woolworth Co.*, 761 P.2d 236 (Colo.App. 1988), *cert. denied*. "A 'defect' does not mean a mere mechanical or functional defect but is anything that makes the product 'unreasonably dangerous.'" *Anderson v. M.W. Kellogg Co.,* 766 P.2d 637, 643 (Colo. 1988). "The fact that the plaintiff may have been injured or the plaintiff's property may have been damaged, without more, does not establish that the product was defective or unreasonably dangerous." CJI-Civ 14:7; *Kysor Indus. Corp. v. Frazier*, 642 P.2d 908, 911 (Colo. 1982).

To determine whether a product is unreasonably dangerous, Colorado has adopted a straightforward risk-benefit analysis. Proponents of a design defect claim bear the burden of demonstrating that, on balance, the risk of danger inherent in a challenged design outweighs the benefits of such a design. *Armentrout*, 842 P.2d at 182. In assessing whether the risks outweigh the benefits for purposes of strict liability, various factors must be considered, including, but not limited to: (1) the usefulness and desirability of the product; (2) the safety aspects of the product – the likelihood that it will cause injury and the probable seriousness of the injury; (3) the availability of the substitute product which would meet the same need and not be as unsafe; (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) the user's ability to avoid danger by the exercise of care in the use of the product; (6) the user's anticipated awareness of the dangers inherent in the product and their availability because of general public knowledge of the

---

of aluminum's fatigue strength, as it references this deposition testimony in its motion. To the extent this testimony relates to why this particular bicycle frame failed, it is appropriate to explain Dr. Jacobson's conclusions regarding

obvious condition of the product, or of the existence of suitable warnings; and (7) the feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance. *Id.*

In this case, Plaintiff has failed to establish the subject bicycle frame was defective in any way. Instead, Plaintiff's expert, Jacobson, merely states the bicycle frame failed due to a fatigue failure, a fact to which Trek's expert agrees. However, as mentioned, such a failure does not constitute a defect. As Trek's expert, Dr. Gary Fowler, states in his report, "fatigue is a progressive mode of crack growth that occurs due to cyclic stress of sufficient magnitude." [See Fowler report, pp. 2-3.]

In his report, Jacobson opines, "the bicycle frame sustained a fracture at the joining of the head tube to the top and down tubes." [¶ 14.] Jacobson found the fork had "an alignment of the steering tube 2.6 degrees rearward from the axis to the fork blades," and "the down tube of the frame had an upward bowing." [¶ 15.] Jacobson opined "the fracture of the head tube at the joint with the top and down tubes occurred because of the presence of preexisting fatigue cracks. These were present before Andrew rode across the cattle guard. When he crossed the cattle guard the vibrating stresses caused the weakened head tube joint to fail resulting in the catastrophic separation of the structure of the bicycle frame." [¶ 16.]

Like Jacobson, Dr. Fowler examined the bicycle frame and concluded: "(1) the bike frame steerer tube experienced a collision force sufficiently large to cause permanent deformation in the down tube and steerer tube; (2) the deformation caused a change in geometry and residual stresses that weakened the frame tube/head tube integrity; (3) multiple fatigue cracks initiated in the frame tube walls due to the loss of strength caused by frame deformation. Frame deformation precede fatigue crack initiation; (4) the welds were of good quality and did

---

fatigue cracks." See Order dated 7/1/10, Doc. No. 50 fn.22 (citing Jacobson's Deposition, pp. 83:21-84:7).

not separate. However, unlike Jacobson, Dr. Fowler's report offers an opinion regarding the existence of a defect, and opines, "there is not any indication of a metallurgical or manufacturing defect." [¶ 17.]

As evidenced by his deposition testimony, Jacobson agrees with Trek's expert that there is no manufacturing defect in this case. Jacobson admits, "I haven't found a defect in this per manufacturing, no." [¶ 19.]

To the extent Jacobson's opinions regarding the use of aluminum are admissible, such opinions simply do not satisfy Plaintiff's burden of establishing a defect. Jacobson admits he has not "done any studies to determine" whether any alleged bad material was used to design the bicycle frame. [¶ 20.] Jacobson offers his speculative opinion that "more likely than not it's a design defect." [¶ 21.] In an attempt to support his opinion, Jacobson testified there is a design defect because the "fatigue wouldn't be visible and discoverable by the rider." [*Id.*] However, when asked how the bicycle could be designed differently so that the rider could see the fatigue, Jacobson testified, "I don't believe they could." [¶ 22.] Jacobson then attempted to offer his opinions regarding alternative designs. [¶ 23.] Pursuant to this Court's Order limiting Jacobson's expert testimony, Plaintiff cannot proffer any testimony or other evidence regarding such alternative designs. [¶ 24.]

Furthermore, Plaintiff has failed to demonstrate that, on balance, the supposed risk of danger in using aluminum outweighs the benefits of such a design. *See, e.g., Armentrout*, 842 P.2d at 182. Neither Jacobson's report nor his deposition testimony even approaches an analysis of the essential factors set forth above, which must be considered in evaluating Plaintiff's strict liability claim against Trek. *Id.*

Plaintiff's bare allegations are also not adequate to satisfy the elements of strict products liability.  "The fact that the plaintiff may have been injured or the plaintiff's property may have been damaged, without more, does not establish that the product was defective or unreasonably dangerous."  CJI-Civ 14:7, ***Kysor Indus. Corp. v. Frazier***, 642 P.2d 908, 911 (Colo. 1982).  Since Plaintiff has not and cannot establish the bicycle frame was defective or unreasonably dangerous in any way, Trek is entitled to summary judgment as a matter of law.  ***Barton***, 938 P.2d at 538.

### B. **Plaintiff's  Breach of Express Warranty Claim Fails As  Matter of Law**

To sustain a claim for breach of express warranty, Plaintiff must prove:  (1) Trek sold the bike with an express warranty; (2) Plaintiff is a person who was reasonably expected to use the bike; (3) the bike was not as warranted; (4) the breach of warranty caused the damages; and (5) within a reasonable time after Plaintiff discovered or should have discovered the alleged breach of warranty, Plaintiff notified Trek of such breach.  C.R.S. §§ 4-2-714 and –715.

Plaintiff has failed to demonstrate the bicycle frame was not as warranted, that the failure was due to a breach of warranty, or that the cause of Plaintiff's injuries were due to a breach of warranty.  Indeed, as articulated more thoroughly above, there is no evidence whatsoever that the bicycle frame was defective in any way.  In fact, prior to the subject incident, Plaintiff owned and regularly rode the subject bicycle for approximately five to six years without incident.  [¶ 5.]

The undisputed facts demonstrate, and the parties' experts concur, the bicycle was subjected to high stress, which caused a deformation in the steerer tube, head tube, and down tube and initiated fatigue cracks, ultimately resulting in fatigue failure.  [¶¶ 16-17.]  There is no evidence of any defect in the design or manufacture of the subject bicycle frame.  Thus, Plaintiff

cannot satisfy the elements of his breach of warranty claim, and Trek is entitled to summary judgment as a matter of law.

### C. **Plaintiff's Claims for Breach of Implied Warranties Are Also Without Merit And Must Be Dismissed As a Matter of Law**

Plaintiff's claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose are not supported by the undisputed material facts of this case. Such claims must therefore be dismissed as a matter of law.

In order to prove his claim of breach of implied warranty of merchantability, Plaintiff must prove: (1) Trek sold the bicycle frame; (2) Plaintiff is a person who was reasonably expected to use the bicycle frame; (3) Trek was a merchant with respect to the bicycle frame; (4) the bicycle frame was not of merchantable quality at the time of sale; (5) the breach of warranty caused the plaintiff injuries; and (6) within a reasonable time after Plaintiff discovered or should have discovered the alleged breach of warranty, Plaintiff notified Trek of such breach. C.R.S. § 4-2-314; *see also* CJI-Civ. 14:11.

Similarly, Plaintiff must establish the following elements to succeed on a breach of implied warranty of fitness for a particular purpose: (1) Trek sold the bicycle frame; (2) Trek impliedly warranted the bicycle frame to be fit for the particular purpose for which it was designed; (3) Plaintiff is a person who was reasonably expected to use the bicycle frame; (4) the bicycle frame was not fit for the particular purpose for which it was warranted; (5) the breach of warranty caused Plaintiff injuries; and (6) within a reasonable time after Plaintiff discovered or should have discovered the alleged breach of warranty, Plaintiff notified Trek of such breach. C.R.S. § 4-2-315; *see also* CJI-Civ. 14:13.

Like Plaintiff's breach of express warranty claim, Plaintiff's claims for breach of implied warranty of merchantability or breach of implied warranty of fitness for a particular purpose fail.

Indeed, Plaintiff has not and cannot show the bicycle frame was not merchantable or as warranted. The lack of evidence demonstrating any defect in the manufacture or design of the bicycle frame requires dismissal of Plaintiff's breach of implied warranty claims as a matter of law. *See, e.g.*, *Shaw v. General Motors Corp.*, 727 P.2d 387, 391 (Colo. App. 1986).

### D. **Plaintiff Has Not and Cannot Establish A Viable Negligence Claim Against Trek**

In his Complaint, Plaintiff alleges Trek negligently designed and/or manufactured the bicycle frame and "negligently placed it in the channels of trade when it knew or with reasonable care should have known said frame to be dangerous and defective in nature, design and materials, and in a dangerous and/or defective condition, in a manner in which [Trek] should reasonably have foreseen would come into use by persons such as Plaintiff who are ignorant of the dangerous or defective condition and Defendant's negligence failed to use reasonable care to prevent such injury to such persons including Plaintiff." [See Complaint, ¶ 28.]  Plaintiff also claims Trek failed to: (1) warn Plaintiff and other consumers of the potential for sudden and catastrophic failure and or breakage of the frame before and after offering it for sale; and (2) provide instructions or warnings as to the inherent safety risk in using the subject frame on rough roads both before and after offering them for sale. [See *Id.* at ¶¶ 29-30.]  Plaintiff's negligence claim is without merit.

As articulated above, Plaintiff has not established the bicycle frame was defective or unreasonably dangerous in any way. Furthermore, Plaintiff's claim that Trek failed to provide instructions or warnings is wholly without basis. In each owner's manual for the Adept Pro, Trek includes the following safety instructions and warnings:

> As with any mechanical device, **every bicycle, and each part attached to it, has a limited useful life due to wear and stress**. **The length of that life varies according to its design, materials, maintenance, and use**.

13

> **A crash can put extraordinary stress on a bicycle or its parts**. **Jumping your bicycle, performing bicycle stunts, severe off road riding, downhill riding, or any abnormal bike riding can be very dangerous because they increase the stress on your frame**. Industry pictures and videos of these kinds of activities depict very experienced or professional riders. **Frames or components under high stress can fatigue prematurely which can lead to premature or sudden failure of your bicycle frame or components. Such failure could cause a loss of control resulting in serious injury or death.**
>
> **Regularly inspect your entire bicycle for signs of stress.** If you choose to jump your bicycle, use it for stunts, or use it in a severe offroad downhill environment, carefully inspect your frame and components for signs of fatigue before and after each ride. **Scratches, cracks, dents, deformation, or discoloration are signs of stress-caused fatigue. Although lighter frames or parts may in some cases have a longer life than heavier ones, it should be expected that light weight, high performance bicycles and parts require better care and more frequent inspections.**
>
> Remember, it is much easier to have an accident resulting in serious personal injury in these situations even if your bicycle performs as intended. Use suitable protective gear, including a certified bicycle helmet.

[*See* 2001 Adept Pro Owner's Manual, p. 12, Exh. A-2. (emphases added).]

The owner's manual also warns users to watch the road and take extra care when off-road riding:

> **Watch the road.**
>
> Watch for potholes, drain gates, soft or low shoulders, and other deviations. Impact to a wheel, like improper spoke tension, can lead to wheel collapse causing loss of control. **When crossing railroad tracks or drain gates, do so carefully at a 90 degree angle. If you are not sure of conditions, walk your bike**.
>
> **Use special care when off-road riding.**
> - **Never ride a road bike on unpaved trails or off road**.
> …
> - **Ride only on the trails**
> - **When approaching a descent, reduce your speed, keep your weight back and low, and use the rear brake more than the front. Avoid rocks, branches or depressions**

[See *Id.* at 11 (emphases added).]

Plaintiff owned his 2001 Adept Pro frame for approximately five to six years prior to the subject accident. [¶ 5.] Plaintiff admits "he had a lot of safety information" for his Adept Pro bicycle frame. [¶ 3.] Plaintiff also admits he rode his bicycle in variable terrains, and has jumped his bicycle onto large rocks, from one major rock to another major rock, and off ledges. [¶ 6.] When asked whether he had ever had occasion where both tires were off the ground, Plaintiff testified, "It's hard to know when you're coming off ledges if both tires at the same time are off the – you know." [¶ 7]. Plaintiff further testified, "You do bunny hop, too. That would be a time when both tires would be off the ground. It could come from one ledge to another ledge." [¶ 7.]

Also, Plaintiff admits that, in the accident giving rise to this lawsuit, Plaintiff was riding his bicycle "about 35 to 45 minutes" on a "constant uphill climb," "got to the top, turned around and came back" down the hill. [¶ 9.] As Plaintiff coasted back down the hill, he saw the cattle guard and "quickened [his] brakes a little bit, decided it was fine, and kept on – let go of the brakes." [¶ 10.] As he approached the cattle guard, Plaintiff was standing up on his bicycle, "out of the saddle." [¶ 10.]

As previously mentioned, both Jacobson and Dr. Fowler agree the bicycle frame sustained a fracture due to high stress, which led to propagation of preexisting deformations and fatigue cracks. [¶¶ 16-17.] Both experts also agree that the fatigue failure caused the bicycle frame to break. [¶¶ 16-17.]

Given the number of years Plaintiff owned and rode the bike, the undisputed opinions of both the parties' experts, and Plaintiff's critical admissions regarding safety information with which he was provided, it stretches credulity to suggest Trek was negligent in manufacturing and/or designing the bicycle frame in question. Further, the aforementioned warning and instructions completely negate Plaintiff's contentions that Trek failed to warn Plaintiff of any

alleged risks involved with the bicycle frame. In addition, any alleged post-sale duty to warn arises only if the bike was defective and unreasonably dangerous at the time it was manufactured and sold. ***Romero v. International Harvester Co.*,** 979 F.2d 1444, 1450 (10th Cir. 1992). As illustrated throughout this Motion, there is no evidence that the bicycle was defective and unreasonably dangerous at any time. As such, Plaintiff's negligence claim fails, and Trek is entitled to summary judgment as a matter of law.

## CONCLUSION

For all of the reasons and legal authority set forth herein, Defendant Trek Bicycle Corporation respectfully requests that this Court grant its Motion for Summary Judgment and dismiss all of Plaintiff's claims against it in their entirety and with prejudice, and for all other further and other relief as the Court deems just and appropriate.

DATED this 27th day of July 2010.

Respectfully submitted,

s/ Steven M. Hamilton
Steven M. Hamilton, Esq.
HALL & EVANS, L.L.C.
1125 17th Street, Suite 600
Denver, CO 80202
hamiltons@hallevans.com
Phone:   303-628-3398
Fax:     303-293-3253

**ATTORNEYS FOR DEFENDANT TREK BICYCLE CORPORATION**

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on the 27th day of July 2010 I electronically filed the foregoing **DEFENDANT TREK BICYCLE CORPORATION'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system that will send notification of such filing to the following e-mail addresses:

Gregory A. Gold, Esq.
greg@ktglegal.com

Timothy Buxton, Esq.
tim@buxtonluther.com

Sommer Luther
sommer@buxtonluther.com
sommer@thegoldlawfirm.net

          s/ Laura Mae Smith
          Assistant to Steven M. Hamilton, Esq.
          HALL & EVANS, L.L.C.

H:\Docs\PRODUCT\Trek\Borel - 15370-1\Pleadings - General\Motion for Summary Judgment.doc